## Mary E. Truly et al. *v.* North Lumber Company.

1. **Master and Servant.** *Injuries to servant. Obvious dangers. Master's command.*

   A master is not liable for injuries received by his servant while performing an act in obedience to his orders, where the attendant danger was so obvious that no prudent man would have incurred it.

2. **Same.** *Pleading. Facts of case.*

   A declaration charging that a wheel of a lumber push car was defective and wobbled so as to throw the lumber on the car over its side while in the lumber yard, and that the servant of the lumber company was at the time walking behind the car, inferentially showed that the servant knew of the defect and also of the risk, incident to the situation, of the lumber striking a post near which the car was to pass.

From the circuit court of Harrison county.

Hon. James H. Neville, Judge.

Mrs. Truly and others, appellants, were plaintiffs, and the North Lumber Company, appellee, was defendant, in the court below.

Appellants brought the suit to recover damages for the death of James B. Truly, caused by alleged negligence of the defendant. In the first four counts of the declaration, which are substantially the same, it is alleged: "That James B. Truly was employed by defendant to help load lumber on a car at said defendant's dry kiln, and push the car, as loaded with lumber, along a tramway, about 100 feet, into appellee's dry shed, under the control or direction of a superior agent of said defendant, or a person having the right to control or direct the said services of James B. Truly, and that said James B. Truly, while so employed by said defendant as above set forth, and other laborers under the control and direction of a superior agent of said defendant, having the right to control the services of said James B. Truly, loaded lumber in a proper manner on the car at the said dry kiln, and was pushing the car loaded with the lumber, when the lumber so loaded on the car shifted, moved, and lay irregularly, and extended further on each side of said car, which shifting and movement of the lumber was caused by the defective condition of said car, in this: that the wheels of said car wobbled and revolved unevenly, thereby causing the lumber on the car to shift or move, and lay irregularly on said car, as above set forth. That although the said foreman saw the condition and position of the lumber on the said car after the lumber shifted or moved as above set forth, he, the said foreman, ordered and directed the said James B. Truly and other laborers, to continue to push said car along said tramway into said dry shed, and, Truly trying to carry out and execute said orders and directions of said foreman, the lumber on the car struck against a post at or near the entrance of the said dry shed, whereby the said lumber car and Truly were pushed and knocked off the tramway, the lumber and the car falling against and on Truly, bruising him, and he sustained injuries, by reason whereof he died. It is further alleged in said counts that Truly, in pushing said car of lumber, had to walk behind said car of lumber, which was between

him and said post, and therefore he did not see and could not have seen that the car of lumber could not safely pass said post, and that Truly did not know, and did not have any reason to believe, that said car of lumber could not safely pass said post, and that said death was without fault of said Truly, and caused by the negligence of defendant." The fifth count alleges: "That James B. Truly was employed as a laborer by said defendant to help load lumber on a car at said defendant's dry kiln, and push the car, when so loaded, along a tramway about one hundred feet, into the defendant's dry shed, and unload the lumber from said car in said dry shed. That, James B. Truly, being so employed by said defendant, in pushing the car so loaded with lumber on said tramway from the dry kiln to the dry shed, the lumber on said car struck against a post at or near the entrance of the dry shed, whereby the said lumber and James B. Truly were pushed and knocked off the tramway, the lumber and car falling against and on the said James B. Truly, crushing and bruising him, and he sustained injuries by reason whereof he, within a few hours, died. That Truly, in pushing said car of lumber, had to walk behind said car of lumber, which was between him and said post, and therefore he did not and could not safely pass said post, and that he did not know, and did not have any reason to believe, that said car of lumber could not safely pass said post. That the death of the said James B. Truly occurred without fault on the part of said Truly." Defendant's demurrer to the declaration was sustained. Plaintiffs declined to amend, and from a final judgment rendered for defendant, plaintiffs appealed to the supreme court.

*D. B. Seal* and *Bloomfield & Cowan,* for appellants.

The declaration does not state that the death of Truly was caused by the action of a fellow servant, or by a defective car, and therefore appellants have the right to proceed under the common law.

And it may be observed in this connection that it is one thing to be aware of defects in the instrumentalities or plan furnished by the master for the performance of his services, and another thing to know or appreciate the risks resulting, or which may follow from such defects. The mere fact that the servant knows the defects may not charge him with contributory negligence on the assumption of the risks growing out of them. The question is, did he know, or ought to have known, in the exercise of ordinary common sense and prudence, that the risks and not merely the defects existed ? 14 Am. & Eng. Enc. Law (1st ed.), 844 (note).

If a master or superior orders an inferior into a situation of danger and he obeys and is injured, the law will not charge him with the assumption of risk unless the danger was so glaring that no prudent man would have entered into it. 14 Am. & Eng. Enc. Law (1st ed.), 857.

The allegation, that the injury was produced in consequence of the negligence of the employees of the defendant implies that there was no negligence on the part of the deceased contributing to it, as a matter of pleading, and it was sufficient. *Hickman* v. *Kansas City R. R. Co.,* 66 Miss., 154.

*McWillie & Thompson,* for appellee.

In this case we find nothing that has not been fully and finally disposed of by the decision of this court in *Ballard* v. *Oil Co.,* 81 Miss., 507. Indeed, the action was brought before the decision in the Ballard case was rendered, and, perhaps, would not otherwise have been brought at all. It is idle to claim that the allegations of the declaration showed a case of liability at the common law. The fellow servant doctrine, independently of statutory enactments, is subject to the "superior servant" limitation in but few states, and never has been in Mississippi. The approved rule is that the negligent act of a superior servant does not subject the master to liability to a fellow servant sustaining injury therefrom unless the superior was at the time

performing one of the duties which the master owed to his serv-
ants. This certainly cannot be said of the mere foreman of a
gang of laborers, who has often been held to be merely their
fellow servant. 12 Am. & Eng. Enc. Law (2d ed.), 933.

In no case in this state has the superior servant limitation
been held to subject the master to liability, and so well recog-
nized was the state of the law in this respect, that the doctrine
was made a part of sec. 193, Constitution 1890, to supply, as to
employes of railroads, what was before lacking. *Railroad Co.* v.
*Hughes,* 49 Miss., 258; *Howd* v. *Railroad Co.,* 50 Ib., 178;
*McMaster* v. *Railroad Co.,* 65 Ib., 264; *Railroad Co.* v. *Cathey,*
70 Ib., 332; *Welsh* v. *Railroad Co.,* 70 Ib., 20.

The appellants can derive no benefit from the allegation of a
defective car, for the deceased, as in the Ballard case, knew of
the defects. The car is said to have wobbled as it was pushed
along, and the timber loaded on it to have become thereby so
displaced as to strike against a post on the side of the track
and thus occasioned the accident, but the declaration does not
pretend that the deceased did not see that it was wobbling and
that the lumber had become displaced. On the contrary, it
shows that Truly, the deceased, was walking right behind the
car and engaged in pushing it. It was not denied that decedent
was familiar with the scene of his daily labors, and knew the
location of the post, and there was no reason why he should have
waited to be stopped by the foreman, who, perhaps, did not
observe the displacement of the lumber after the car was started.

WHITFIELD, C. J., delivered the opinion of the court.

The counsel for appellants concede that the first four counts
of the declaration were drawn under the act of 1898, and that,
under *Ballard* v. *Miss. Cotton Oil Company,* 81 Miss., 507, 34
South., 533, 62 L. R. A., 407, no recovery could be had un-
der that act. But it is insisted that certain facts are set out
in these four counts which, taken in connection with the fifth
count, state a common law cause of action. We think the fifth

count is an attempt to state a common law cause of action, but it is perfectly apparent from the averments of the declaration that the deceased knew that the car was defective, and must have known the location of the post. The declaration discloses clearly enough to us that he must have been familiar with the location of the post and of the surroundings, and it is expressly shown that he did know that the car was defective and wobbled. The averment on this point is as follows: "Plaintiffs further allege that James B. Truly did not know, nor did he have any reason to believe, that the defective car wheel would cause the lumber to shift and extend so far on each side of the car that it could not safely pass by said post along said tramway into said dry shed. That said James B. Truly, in pushing said car of lumber, had to walk behind said car of lumber, which was between him and said post. Therefore he could not have seen that the car of lumber could not safely pass said post. That said James B. Truly did not know, and did not have any reason to believe, that the defective car wheel would cause the lumber to shift and extend so far on each side of the car that it could not safely pass by said post along said tramway into said dry shed. That said James B. Truly, in pushing said car of lumber, had to walk behind said car of lumber, which was between him and said post, and therefore he could not have seen that the car of lumber could not safely pass the post. That the said James B. Truly did not know, and did not have any reason to believe, that said car of lumber could not safely pass said post." Much of all this allegation is by way of inference. But it is plain that the declaration does not deny that the deceased knew the car wheel was defective, or that the car wheels wobbled, or that the result of their wobbling was to throw the lumber over the side of the car. On the contrary, it avers that "he walked behind the car," and, of course, must have seen the wobbling of the wheels and the disarrangement of the lumber. So, again, the allegation is not that he did not know that the post was

located just where it was—just as close as it was to the car—
but simply that, because "the lumber was between him and
the post, therefore he could not know that the lumber would
hit the post." It is perfectly obvious that the declaration sub-
stantially discloses that he did know that the car was defect-
ive, that the wheels wobbled, and that the results of this was
to disarrange the lumber on the car, and that he was per-
fectly familiar with the *locus in quo,* and knew the location of
the post. It is impossible to save the cause on common law
principles, when the deceased stands charged with a knowledge
of these facts. But it is said, again, that "the superior of-
ficer" ordered the deceased into the place of danger, and he
was bound to obey, and therefore appellants should recover. But
this rule is always qualified by the exception that there is no
liability if the danger is such that no prudent man would have
encountered it, as is said in the authorities cited by counsel
for appellants. In view of what we have stated, the declara-
tion showed that deceased knew that the risk was so obviously
dangerous that no recovery could be had for this reason.

And finally it is insisted that it is one thing to be aware
of defects in the instrumentalities furnished by the master in
the performance of services, and another thing to know and
appreciate risks resulting from such defects; and it is said
that the question is, did he know, or ought he to have known
in the exercise of ordinary common sense and prudence, that
the risks were dangerous? 14 Am. & Eng. Enc. Law (1st ed.),
844, and note thereto. The principle is sound enough, but the
trouble here, as throughout the case, is the state of case made
by the facts averred in the declaration. We think it obvious, from
the averments of the declaraton, that deceased knew the risk
arising from the defective car wheels. The pleader expressly
states that the car wheel was defective, that it wobbled, and
that the result of the wobbling was to throw the lumber over the
side of the car, and that deceased walked behind the car. He
therefore necessarily knew—because he observed the facts thus

stated, and knew where the post was—that the risk to be encountered was the risk of having the lumber strike the post, and thus of being thrown back on him.

We have given the case most careful consideration, sincerely sympathizing with the appellants in their great loss; but, within the rules of the law, well settled and long estabished, these appellants must fail.

*Affirmed.*

TRULY, J., took no part in the decision of this cause.